First case Powell versus the Huntington National Bank. Mr. Breckinridge nice to see you sir. Nice to see you too your honor. Good morning and may it please the court I'm Tillman Breckinridge on behalf of Jeremy and Tina Powell. At page 87 of the joint appendix in her affidavit Huntington Bank's corporate representative says and I quote the decision whether to charge a late fee is by the date when Huntington considers a mortgage payment to be late and that's the rub here. Barnett Bank codified by Dodd-Frank says that so long as West Virginia law does not forbid or significantly interfere with an express congressional right established for the bank then it is not preempted. Here West Virginia does not significantly impair or forbid anything that is expressly allowed by federal law for the bank. Yet Huntington claims that there is such a power but does not establish the source of such power insofar as. Do you consider the law to be the regulations from the office of the controller of the currency is that the law as well? It is the law as well. I'm not trying to trip you up I'm just asking. Yes your honor. I under the Barnett Bank standard the Barnett Bank's standard specifically states Congress but it has been since interpreted to include OCC regulations. I will say though that Huntington hasn't pointed to an OCC regulations saying that it has the right to determine when a payment is late when it's not actually late. The West Virginia. You're saying the OCC regulation doesn't conflict. Right your honor. There is they have not. If there is a if it does conflict you lose? If there is an OCC regulation that expressly grants them this power then yes we lose but there is no OCC regulation expressly granting them the power. How express would it have to be? It says you may determine the when you post payments or how you post payments. I'm asking how specific do you think it has to be? I think it has to be so specific in this instance as to say that you may charge late fees based on account status because that's that's the that's what they're asserting is impaired. They want to charge late fees based on account status as opposed to whether a payment is actually late. You think that's the same thing as when posting occurs? No I don't. You don't? And and so there's there's the key to that is that in this in the statute there are actually two sentences. The first sentence says that you cannot consider a fee late if a payment if a monthly payment is due and that amount is paid during that month. Sorry I hit the microphone but that amount is paid during that month. That is not a posting rule and then the second statement says for the purposes of this section you will consider an installment paid during that month if it's actually during the current month if it's actually paid in that month. And so even though it says says that delinquent installments have to be considered for a particular time I don't know that that's necessarily required to meet the first sentence of the section which is really where the clarification is. Maybe I looked at it too simply but I thought the issue was what established their right to and if their practice of when they posted payments and late fees if that somehow was preempted is that not how you see it? Because as I understood it they took the November payment and posted that for October's payment and that then made November late. Right. So it's a question of when they post to the client's account? Yeah and that's that's one of the challenges of this case I think that's kind of a red herring because ultimately under the language of the West Virginia anti-stacking statute it's not as if they have to keep two separate sets of books. Has West Virginia repealed this thing already? Yeah West Virginia has repealed it there's no sign that that was retroactive in any way. So in 2014 they changed it. Right. Now they can do independent of this, Huntington Bank and any bank could do what you're saying Huntington Bank's doing. As far as the statute is concerned yes I will say that it's not consistent with the contract. This is going back to 2011 or something. Judge Shedd asked you about the the posting issue and if I understand your position it's that the bank could do whatever it wants with respect to the payment they just can't charge a late fee if your client complies with the letter of the statute regarding payments. Exactly that's exactly correct your honor. So all this discussion in the brief in brief rappel is about how you know there's there's concerns about amortization and all that there this statute doesn't touch that. Why isn't it I mean I get that but why isn't this ultimately a claim about usury and the rate of interest and how much a bank can charge. I mean it doesn't it boil down to the fact that the bank wants to charge an additional late fee but the West Virginia statute doesn't allow it and essentially prohibits what federal law otherwise allows or the law of the state in which the bank is chartered allows. Well I'd agree with the first half of that and not the second half your honor. The first half of that being that that this is about whether a late fee can be charged. Now the second half of that as to whether that's a usury issue is a different question. The usury the 12 USC section 85 specifically states that that they can use the home states rates interest rate laws. This is not about interest rate. But a late fee is in fact can easily be converted I suppose into a rate. I think Justice Scalia said as much in one of the Supreme Court cases whose name doesn't come to mind immediately but that's but why is it there you go that's why we have you here. So why why isn't that that seems to make sense here why doesn't that apply because we're not charging the we're not challenging the amount of the late fee. It seems like that seems like semantics to me you are in fact challenging the late fee. You don't want your client to pay it. Well your honor I respectfully disagree that I'd say just the opposite that the other side of this is semantics because we're challenging whether or not an interest can let's call let's go ahead and call the late fee interest. We're not challenging that they can't charge $15 for a late fee. That's perfectly fine we're not challenging that in any way shape or form. That's the interest rate. What we are challenging is whether or not they can charge interest on something on which they're not actually entitled to interest. Why are you so quick to reject what Judge Diaz asked you? Because why why why wouldn't that be a good claim by you? I'm just wondering under your argument you claim you being charged additional late fees that you shouldn't be charged correct? Yes your honor. And that if that turned out to be then what amounts to nothing more than under the law that you cited case you cited an increase in what you have to pay that's an increase in interest. Why isn't that a good argument for you? Why do you want to run away from that? Because the interest even with that is within the state law? Well I'm not running away from the fact that it changes the total amount of money that a pension bank gets. In other words the argument is they charge you more interest than they're entitled to and if you somebody charges interest you automatically think of usury laws but you seem not to care about that. I know that maybe you just well no I don't want to make that argument but I'm wondering why you're so quick to reject it when Judge Diaz asked that question. Well I apologize if I was unclear I'm not rejecting at all the concept that the payment is an interest payment and that. Not that concept but that the concept that there and then the late fees stacked up increase the interest rate so that it falls out of any kind of preemption. Well you were rejecting that pretty clearly. Yeah I do reject that it's an interest rate because then it would at least arguably fall in within the preclusion of sections 85 and 86 of title 12. So in any under section 85 the bank in this case being chartered in Ohio would be able to charge any interest rate allowed by that home state Ohio is that right? Yes your honor. Okay so Ohio allows the late fee in question you agree with that? Yes your honor. Okay and West Virginia? I should I should say I'm I can see I'll concede that point. Okay and West Virginia forbids it right? Yes your honor. So why isn't that a classic preemption case? Because it's about because it's not about the rate of interest charge. So the example I was about to give is for instance if if if Huntington Bank wanted to charge interest to the Powell's neighbor based on the fact that the Powell's have a loan with them that they can't charge interest to the neighbor and state law can forbid them from charging. But under Ohio law they couldn't do that either. There's no there's no conflict there. Well but let's say Ohio law allowed them to do that. They still the state law still would control here. That would be a very funny law but it would it could be a challenge for reasons other than then than preemption but that's not our case. In this case the bank is charging its borrower a fee that would otherwise be allowed under the law of the state in which it's incorporated or chartered and West Virginia forbids it. That just seems to me to be a classic of preemption case. Well your honor I I would ask I would ask the court then to go back to the actual language the direct language of the statute under section 85. Section 85 states that it's that that the bank can only charge based on state law on rates of interest not based on whether or not there is a right to interest. So we then get back to the Smiley case where Justice Scalia said call it what you want to call it. Potato, patato, it doesn't matter. A late fee is in fact a method of calculating interest. Right and so we don't dispute that they can charge $15 as a late fee if there is a late payment. But that's different from that's a very different dispute as opposed to saying that there's not a late payment on which they can make pay a fee out to bring it to bring it closer as it for an example if there if if the if if if the Powells had been completely current on their loan but Huntington charged a late fee anyway then West Virginia law could stop them from doing that as well even if Ohio law allowed them to do it. Why would federal law would prohibit that? Federal law would prohibit that as well but the federal and state law often both prohibit malicious activities and in this case. But your argument is it wouldn't be preempted. Right that's what that's exactly. It might be it might be federal law on it but the state law on that it just as happenstance they would happen to be the same but you would say there would be no preemption then because they that's not what a bank is authorized to do. Exactly your honor. I can say why you're falling back to the fact of being charged. What about the regulation about terms of credit that basically I'm sort of paraphrasing. State law is preempted as to terms of credit which includes schedule of repayment for principal and interest. What about that? Yeah Huntington relies on that under 12 USC section 371A as a claim as to a banking power that is forbidden or under the Barnett Bank Standard forbidden or significantly impaired. And so I would ask I would ask Huntington how in the world is it how in the world is is its terms of credit forbidden or significantly impaired by this. There are a multitude of terms of credit in the agreement that are not even touched by this and if you talk about a specific term they can't point to a specific term of credit within the agreement that allows them to stack late fees. The way they post the late fees and payments is that in any note or agreement that your client signed with them specifically? Not specific to how it refers to the late fee issue here. So there is in the deed there is something about posting of payments but it doesn't it doesn't it runs it it it kind of modifies a parallel course of posting payments. Let me ask this if there's not if there's not a specific provision on posting of payments and late fees does not in your that's not an express agreement correct or provision of the agreement. How do we then decide what can do outside the express provisions of the note? What do we look to? Well I think state law, federal law, what do we look to? Well as the master of our complaints we've invoked state law in the West Virginia State. I know that's what you argue but I'm just saying under the law what do we look to? If there's some term that the banks which is I think is going to be the argument I think they're going to stand up and say under the terms of credit including schedule of repayments and including is not exclusive so other things and how we post determines how we get paid back and what the amortization schedule is that is the quintessential terms of credit and they're going to say I don't know what they're going to say but I'm asking the same question and they're going to I think I know what they're going to say let me answer but they're going to say we are allowed to do that and I'm kind of wondering under what do we get to to say they're allowed to add some provision that's not expressed? Certainly you have to be able to do that, right? Right. Well, yes. What do you look to? What do you look to to see if what they did is allowed? Is that state law or federal law? Well I think you look to federal law as to whether or not there is a provision allowing them to do it and then you look to the contract as to whether or not they've actually executed on that. Let's just say for the sake of my argument they haven't I'm not aware of any provision in any regulation or law that says a bank may decide how to post payments. Are you aware of one? I'm not, Your Honor. Okay. So then what do we do? Well, then you count that as something that's not under Barnett Bank expressly permitted by federal law and so therefore it's something that's not where state regulation of it is not preempted. And so there's no implication on those specific terms I told you. If it's not express, then they can't do it? Right, Your Honor. Under Barnett Bank, Barnett Bank says that it needs to be an express provision. I know, but it is terms of credit. Terms of credit isn't express. Yeah, terms of credit is an express provision and so when they take it so broad as terms of credit, I think then you have to look to that language in Barnett Bank of does it forbid them from executing terms of credit or significantly impair terms of credit. And in this case... You see, the argument is going to be, I think, we have the express term of terms of credit that we can operate under. And if you change how we post payments, it does clearly affect the core of what we do, which is make interest and the amount of interest we make in the business of loaning money. It couldn't be anything that's more fundamental to the loan relationship than how much we get paid back and when we get paid back so that we sell the interest yield that we were supposed to get under this agreement. They're going to go, that's absolutely the most fundamental thing we do. Well, and in that case, I'd say what's the limiting principle because that argument basically boils down to if it costs us any money, then it impairs our banking powers. I'm going to ask him that very same question because I think it does lead to that. What is the limiting principle then? They may say nothing. Yeah, and I agree. I don't think that argument has a limiting principle. And when it comes down to it, the Barnett Bank Standard requires significant impairment. And they haven't provided any reason how this significantly impairs. Well, there have limitations that have been, for instance, usury limits. As the Supreme Court said, that's a limit. Right. That's a limit. So it's not unlimited. And maybe notice provisions on foreclosures or calling the property due. That's another limit that's been imposed, isn't it? Yes, Your Honor. Well, so there are limits on it. I'm just looking for the principle to say what those, if you can, if limit, the bank, the court said usury is a limit on this. Right? What's your principle basis for what makes this a limit, should make this a limiting principle? Well, and may I have a leave? You understand my question? Even though my time is running out? Question. Thank you. You understand my question, don't you? I think I do. Okay, good. And so what principle I would put on it, Your Honor, is that they have to be able to point to, if they're going for the terms of credit point, then they have to point to what terms of credit are actually, what terms of credit listed in their agreement are actually forbidden. They have to first establish that it's really a term of credit, which I don't think that this would be a term of credit. So you can save some time, but your answer is they have to show an express term in the law and then an express term in the contract? Yes, Your Honor. Okay. Does that answer your question? It does for now. Thank you. Thank you, Your Honor. I'll reserve the remaining time. You're reserved some time. Mr. Long? Good to have you here, sir. Thank you, Your Honors, and may it please the Court, Robert Long representing the Huntington National Bank. If I could begin by taking just a step back to say, you know, when Congress established national banks in the 1860s, it established a parallel system of banking. There was concern at the time that states were going to be hostile to national banks, and so the basic idea was that national banks would get their banking powers, their powers to engage in core banking activities from federal law, not from state law. And as the courts have held many times over more than a century, and the Supreme Court has held in the Barnett Bank case and in the Waters case, we're not in sort of the ordinary rules of preemption here. The idea is that a state law that prevents or significantly interferes with the exercise of these federal banking powers is going to be preempted. And as I think as Judge Shedd was suggesting, what we're talking about in this case is, of course, loans. That's absolutely central to banking, loans secured by real estate, and then interest on loans. I mean, there is a question about, well, gee, this is a fee. It, you know, as you can see in the, this is the record page 99, this fee is either 4% of the unpaid installment or $15, whichever is less. But you agree, you can't, the bank can't do anything it wants to do. Well, of course not, Your Honor. So there's a limiting principle. Because, I mean, first of all. There has to be a limiting principle on what you can do. Right. Let me first ask, where do you find your authorization to post the way you post? And when I say you, I mean your client, of course. The way you post. Is there, 1A is, is there any express provision in the loan agreements or the note or deed of trust or anything which authorizes that, an express provision? To my knowledge, the note and the deed of trust do not expressly say the bank is going to apply the remission. So is there, so you're saying, if I understand you, there is no express provision to authorize this? Well, where we claim the bank gets its authority is. But it's an express provision on how and when you can post. I mean, there are the OCC, the Office of the Comptroller. And that talks about posting? Yes, we cite, I believe it's at page 15 of our brief. Let me see if I can remember the page numbers that well, maybe not. Yes, we cite some OCC interpretive letters. And it says, yeah, okay, go ahead, I'm sorry. But this is working its way down through, I mean, the basic analysis, now this is on the first preemption argument. Your honors, we're also raising the second argument about section 85. But on the first preemption argument, where the authority comes from, at least this is our view, and it's the OCC's view too, is you start by identifying, well, what federal banking powers of the national bank are at issue here? And there are several, and they're not really disputed. It's the power to make loans secured by real estate. It's the power to service those loans. It's the power to charge fees on the loans. And then directly to your question, Judge Shadd, I mean, actually, the power to post transactions to customer accounts is one of the implied powers of national banks. And the point is, you said implied. Implied's not explicit. And the explicit, you say, is in that letter. But there's nothing in the rate itself or in the statute itself that says your order of posting. It's in these OCC letters, number 916 and number 1082. But it's also, if you look at the Gutierrez case from the Ninth Circuit, which was a very similar issue about posting credit and debit transactions to customer accounts. I know, but this is the Fourth Circuit. And we certainly appreciate our colleagues in the Ninth Circuit. And I'm sure if we hold them to the same esteem, they'd probably hold us, quite frankly. I would never suggest that the Fourth Circuit should yield an inch to... I was going to say this, though. But it looks to me, it comes from terms of credit. It's not... I can't find that it's explicit in the law or the regulations. There's that advisory letter or whatever you call it. Does it come from terms of credit in the regulation? Yes, we think absolutely this is a term of credit because it's... That's implied, but that's implied. That's not explicit. Well, but... Of posting. But, I mean, it's... Well, it either is... Maybe technically it's implied. But as the district judge pointed out, I think quite correctly, when a borrower can, you know, fail to make a payment and then decide, I'm not going to catch up on this. I'm just going to stay behind on this. I'm not necessarily saying you're wrong, but I'm just trying to understand it. Right. And in the regulation and the law, I don't see there an express provision on when and how a bank may post. So then, I think your argument drops back to terms of credit, correct? And what... Is that correct? Yes. I mean, other than these OCC letters that I pointed out, which I think do give this absolutely... Express statement that you're looking for. Do those letters preempt state law? Well... The regulations preempt. They're called interpretive letters, Your Honor. And, I mean... You know, the interpretive letters of the OCC preempt a state statute. I mean, this is a statute enacted by the legislature of West Virginia. They're not notice and comment rules. They state the view of the OCC, which is the expert agency. I would not argue, to Your Honor, that they are binding on you. I think they give you a view of what the expert agency... You're saying that in terms of credit with Huntington Bank, these payments have to be made, what, by the 10th of the month? I'm sorry. When do they have to be made? By the 10th of the month? If a payment's due on the 1st, it has to be come in by the 10th? Well, this is... Now, this is under the... It has to be posted as paid by the 10th of the month? Otherwise, you put on... Or by the 15th, actually? The 15th of the month. Otherwise, you put a $15 late payment on it. Right. And I think that... And you take that off the top of the payment, so the payment's short. Right. So, every month after that, you got to credit the short payment, and then you charge another late fee. That's actually not the way it works. That's not the way it works. And if you look at the record... But your computer program has all that figured out. That's what you're saying, and you're entitled to do that. Now, if I could just have a moment. Page 104, you can see in the... Isn't it here? I thought in here, when the November payment, what was purportedly the November payment came in, that payment was applied to October, to bring October current. Just part of it. November. But I'm afraid there's a misunderstanding. The way this works, and you can see it on page 104, the bank would never take its fee first. It takes its fee last. So, there would never be a situation, which I think is actually the situation that this, the provision that West Virginia adopted, and then has recently repealed, was mostly directed at, where because the bank was taking its fee first, that was causing a borrower to fall short and incur a fee. This is simply about, Your Honor, if the borrower falls behind, so is definitely behind, and then does not catch up, but does make one payment. So, the borrower owes two payments, it makes one. Do you apply it to the oldest overdue installment? You say 104, you're talking about the joint appendix. Sorry, Your Honor. You're talking about the joint appendix 104? Yes, if you look at joint appendix 104, that sets out the order in which the... And that's the deed of trust. That's the deed of trust. So, it's in the deed of trust. Right, and you'll see that... It's in the deed of trust for the pals. The very deed of trust... Fifth and last is paying the late charges. So, that, if there's not enough to pay all the principal... I see it here. Fifth in line is late charges due under the note. Yeah, and that's paid absolutely last. So, there will never be a situation where, because the borrower did not, in addition to paying all the principal and interest, did not, in addition, pay a late fee, the bank takes its late fee first, and that causes them to be short on principal and incur another late fee. That does not happen, and that goes to a basic point. I mean, all of these rules are important for consumers, but there's a lot of federal regulation... Because the late fee never gets paid. Well, if, I mean, it's owed to the bank, and the bank would like to collect it, but the way this works, under the note, and many of these requirements are imposed by HUD. They come from the federal side. There is federal regulation. After you pay the first $15 fee, you will never get another fee for missing that, that payment that you've missed. I know that. And if you don't pay the fee... But under the way you posted here, if you skip a payment, you're going to continue to get late fees. If you miss a payment, you're going to continue to get a late fee. That's the point here, isn't it? Yes, and we submit... But isn't that the factual scenario here? Yes. If you miss your, say, miss your September payment, which was... And is that expressly stated in any contract that the borrower signed? How do they know that's how you're going to do business? Well, it does say in the note, and this is on page 99 of the record, it says, if the lender has not received the full monthly payment required by the security interest by the end of 15 calendar days after the payment is due, the lender may collect a late charge in the amount of 4%. But it doesn't say that we post them in the order of delinquent accounts, though. It does not, and that's... Okay, so, in other words, I think the answer is there is no express provision to allow you... Express provision that they were aware of to allow you to do what your client did. Is that correct? I would agree with that. Then where does your client get the authority to do it? They just say, we decide that's how we want to do business, and that's how we do it? Right. How do we fill in... And they're really the two routes, and they're the two types of preemption that are described in our brief. The one route is you start by identifying the national bank powers. The one that I would say is most directly relevant to your honor's question is the actual implied power, and implied powers are treated just the same as express powers you can find. No, I know that, but you're taking too long to explain it. How do you get to the point where you can just decide without the borrower knowing the way you're gonna post? How does a bank just say, I'm gonna do it a way that I want to do it, and they don't know about it, and I am at liberty to fill in our agreement with terms they don't know about? Try the other route, which is quicker. Under Section 85, that's allowed by Ohio, which is Huntington's home state. Before you get to that, let me just, and I do want you to get to that, but I wanted to follow up on this issue of posting and what the West Virginia statute requires. You seem to be saying that the West Virginia statute literally requires your client, for purposes of loan servicing, to post in the manner suggested by the statute, but I don't read it that literally. What it says, essentially, is that you can't charge a late fee, and for purposes of charging a late fee, you can't post in the manner in which you've just suggested, but that doesn't mean that the bank can't post the payments however they want to, for other loan servicing purposes. What am I missing? I mean, first, I would agree with you. It says for purposes of this subsection before it was repealed, so I would agree. It's for purposes of late fees, but I would say two things in response. I mean, late fees is really a big part of the ballgame. I would say most of the ballgame here when you make this decision of how are you going to post these charges, so it's not that helpful to a bank to say, well, you can do it a different way for purposes of foreclosure. You can do it in a way that's helpful to the borrower, but for purposes of protecting yourself against the additional risk that you'll never be repaid that arises when a borrower falls behind and stays behind multiple months in terms of trying to control how much money you owe. I mean, this goes to the essence of banking. There's an amortization schedule. If a borrower just decides, I'm not going to catch up on this loan, I'm going to stay behind. OK, so getting back to Judge Shedd's question and the point that I was trying to raise with Mr. Breckenridge, why doesn't Section 85 answer this question, even though the district court didn't seem persuaded? We think it does. We think there are two roots that lead to the same result in this question. I mean, again, trying to compress my answers, under Section 85, there's no doubt that this fee is interest. The Supreme Court held that in the Smiley case. There's no doubt, and it's uncontested, that Ohio allows this fee. So where the district court thought Section 85 didn't apply, said, well, this is different because Ohio is completely prohibiting this fee, at least in these circumstances, rather than just reducing the rate or saying, you know, this fee is too large, it needs to be smaller. And the district court thought usury really is about just is this too big. And we think that is not consistent, really, with the statutory language. Explain to me, if I understand your argument, it is preempted. And to get the answer to my question of why are you allowed to do what you did, you go, you look at state law. Well, not quite. That doesn't sound like a preemption case to me. In our first argument about prevents or significantly interferes, but that's totally federal. I keep going back to, where do you look for the authority to add a term to the agreement? Where do you get that right to decide how you post? Where does that come from? You enter an agreement, let me set it up again. You enter an agreement, there's no express term that allows you to do what you did, but you say, we can do it. I'm going, where does that come from? When you add a term to the agreement, it normally would be in a contract case under state law. And by the way, it sounds like a contract provision. You're not modifying, but changing or further explaining the contract arrangement you have with the borrower. That sounds like state law to me. But where do you say your authority does it to post? You're not the authority, but how can you just unilaterally decide to do that? I mean, there is no contract claim in this case. You went there, I mean, what originally was in the case was not a- But I'm trying to understand the law and what you did. It looks to me like what you did was you modified, modified may not be the exact word, but you changed the contractual relationship because your contractual relationship is we'll loan you this money and you will pay us back this much per month. And if you're late, we're going to charge you a late fee. But then in addition to all that, the bank said without telling them, this is how we're going to post in a way that's going to affect your rights. And we just can do that. Where does that come from? Well, it sounds like contract. But it's common. Not every detail can be spelled out in a contract, Your Honor. I mean, this is- All right, so you want to add to the contract. Where does that come from? How are you authorized to do that? But we're authorized, we say, by federal law. I think what you're saying is it needs to be also- I don't mean to interrupt your answer to Judge Shedd, but I thought your position was that Ohio law allows the very practice that your client is engaged in, right? Is that correct? Yes, and maybe that's part of- I mean, Congress, rather than spelling all this out itself, has said as a matter of federal law, a national bank looks to the state law of its home state. Maybe that's- So in that sense, it is state. It is state law. Maybe that's where we're getting hung up. That seems to me- I don't know if I'm getting hung up, but that seems to me odd that we claim preemption, and under preemption, we look to state law. It's generally just the opposite of that. We claim preemption, and we get to ignore state law. Well, but it's the- The federal law is borrowing the state law of a particular state, which is not unheard of. I would agree with you. It's a bit unusual. One state law rather than 50. Exactly, which is a big part of what's going on here. As this court said in the Turnbull case, part of this creation of the parallel national banking system is that national banks should not be subject to 50 different state laws and potentially any number of local- But your argument is then, your argument is we may do this post the way we want to post, because Ohio law allows us to do it. Yes, that's our Section 85 argument. That's one of our two arguments. And so that your, what provision is it, the terms of credit, is that what you say authorizes you to decide you're going to control the way you post? And then the state law in Ohio allows you to post the way that you want to. But your authority, I'm not talking about how you get to modify the contract or whatever we call that. You said that's borrowing from Ohio law. You're allowed to do it that way. And the fact that you're even allowed and have the authority to even decide to post and how you want to post, decide that first question, comes out of terms of credit? Yeah, that's one of the places it comes. Where else does it come? It comes out of these OCC letters and that non-authoritative, but I would say well-reasoned case from the Ninth Circuit, the Gutierrez case, and also Monroe Retail, the Akopian case, there are a number of cases. I'm talking about what binds us. The Ninth Circuit doesn't bind us. But you're saying in terms of credit, by way of regulation, binds us. Yes, there is the regulation. I mean, and I would say obviously. Is there any provision in the regulation or provision in the law? Not the advisory letter was not regulation. Anything else, or does it really come from terms of credit? Yes, yeah, I mean, I think that's if you're looking for a really sharp, simple answer, which I can tell you are, and I'm not giving it to you quite as sharply as you want, but that's... I'm looking for a correct answer, but I don't see where it comes from other than, I just don't see where it comes from other than terms of credit. Yeah, and I think part of the reason why I'm not giving you answers that are really satisfying you is from my perspective, there are multiple routes to the same bottom line in this case. Some of them are not as specific and sharp as you're looking for. They start from these general principles of are there banking powers that are significantly interfered with and they work their way down. So that's not gonna have this very sharp, specific law that you're looking for. Others are more specific like terms of credit, like the OCC letters, like the borrowing of the Ohio law, but these are separate routes that to me, all roads lead to the same place. This is, as I think perhaps Judge Shedd, one of the judges said, this is not like some of this court's other cases like what notice do you give before you sell a repossessed automobile that is some distance away from the core of banking. This is loans, this is a payment comes in on a loan. How do you credit? Yeah, but there's nothing more important on a loan than the right to be able to repossess the property. That's notice, I mean, people, because if you can't take the property back, I guarantee you nobody's gonna pay you your payments. So there's nothing more critical to a loan realistically than the right to take the property and we do have provisions on notice that affect your rights there. But so it is, I don't. And now I'm the long, let me ask you this. I think your time is up, but I'd like to ask this question. So I think you said that this is not a breach of contract claim. And I guess by that you mean that the parties in this case have contracted for special provisions governing how posting of the loan would occur and interest and that kind of thing, assuming that it didn't otherwise violate applicable law. But as I understand it, the contract in this case, the loan agreement said that West Virginia law would apply to the agreement. If that's the case, let me finish my question. If that's the case, then why doesn't the West Virginia statute regarding posting and the prohibition of late fee apply? It said West Virginia and federal law, I believe, your honor. And we did not get into briefing this. Believe or do you know? I believe it refers to federal laws. And we can submit additional authority on this. This issue has come up before and where there's that kind of statement in a contract, the notion is to the extent the state law is preempted by federal law, the supremacy clause, which is of course a law, means that the federal law will take priority. So again, this claim has been dropped. There was a contract claim in the case at the beginning. It is out of the case. But the reason why that would not be a contractual agreement to apply preempted state laws is because I think you'll find there's also a reference to federal law. All right, we'll ask Mr. Breckenridge that question. Thank you very much, Mr. Long. Appreciate it. Mr. Breckenridge? Mr. Breckenridge, do you agree with what Mr. Long just said? Or is there an issue about the choice of law clause in the agreement? Well, I don't think the choice of law clause would apply in the way my friend on the other side suggests insofar as if they want to invoke Ohio law, they should have put in the contract a federal law, Ohio law, and West Virginia law instead of just federal law and West Virginia law. But I- They say Ohio law's in the U.S. Code. Right, yeah, that seems to be the suggestion. That's where the bank's headquarter, located. Yeah, that seems to be the suggestion, but I think you'd need to say that in the contract if you're going to then invoke Ohio law. But in any event, I did want to address all of the, my friend on the other side suggests that there are all these different ways of getting at their power here. But every time he got pressed on one of them, he'd just move to another one. So I want to quickly dispel some of these things, like for instance, the OCC letters. The OCC letters are about posting of checks to a checking account. And so it's posting of payments to a checking account. It has absolutely nothing to do with posting a person's mortgage or his payments to his mortgagee account. And that's true of Gutierrez as well. And the key in that is that that comes to a specifically delineated power in 12 CFR section 7.4002 that is specifically cited in Gutierrez that is not applicable here, because as Huntington Bank claims, this is an interest issue, and that goes under 12 CFR 7.4001, which does not have the same powers delineated to the banks. And so, and then getting into the contract, Judge Diaz asked the question about, well, what does the contract allow you to do? And in their brief, they talk several times about how they want to have this power, and they claim to have this power to charge based on account status, but that's not what the contract says. I would like to take credit for that question, but I think Judge Shedd actually asked it. Okay, fair enough. I apologize, Your Honor. I'll take credit. You think it was a good question, if not, Judge Diaz asked it. Excuse me, it was a very good question, because at page JA99, they very easily could have said if the lender has not received full amounts due and owing. They didn't say that. They said full monthly payment. That's a defined term in the contract. And so, you know, if they had said full amounts due and owing, this would be, they'd still probably have a problem, but it would be a closer case. You didn't allege a breach of contract claim, did you? Well, we didn't allege a breach of contract claim, but we did allege under the West Virginia law that they are not in compliance with the contract, and that is relevant to that law. And so, it's still important that they, even though they assert a power under the contract to be able to post payments this way, they don't actually have to. Yeah, I don't understand that. They have to be in compliance with West Virginia law, not the contract, right? They have to be in compliance with both, but I think it makes the West Virginia law. You didn't allege a breach of contract claim, is what I'm suggesting. Yeah, we didn't allege a cause of action based on breach of contract, but our complaint does allege that this breaches the contract, if you get the distinction that I'm trying to make. And as part of the proof that would assist in making the West Virginia consumer credit claim stronger. And so, on top of that, I wanted to also touch on this amortization schedule argument because it was brought up again, and either way, no matter how they post the payment for late fee purposes, the amortization schedule is going to be affected one way or the other if the person just stops paying. So, if the person doesn't make the catch-up payment one way or the other, the amortization schedule has to stretch out past the loan term, or they have to foreclose. It doesn't make a difference. I want to ask one factual question. When the payment was made for November, and I think I have the months right, did the check say for the November payment? Is that written on the check? Does that, factually, I'm interested, if it's in the record. And I hate to correct you, Your Honor, but it's actually September, October, not November, November. Okay, you get my point, though. But yeah, my understanding is that the check doesn't specify intent. However, I will say, though, that the check includes the amount of the monthly fee and the late payment fee, which means that it paid all the amount that came due in owing in the prior month. And so, that seems to suggest an intent that all the current amounts due, that's what they're paying, as opposed to the old amount due that they have not paid. And so, I think it's a factual matter. I was just asking that. Fair enough. And so, unless there are any further questions, I urge the Court to reverse. Thank you. Thank you, Mr. Breckenridge. We appreciate it. We'll come down and greet counsel and then take up the next case.
judges: Robert B. King, Dennis W. Shedd, Albert Diaz